# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### COLUMBIA DIVISION

| | | |
|---|---|---|
| CEDRIC WHITESIDE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:17-cv-00024 |
| | ) | Judge Campbell / Frensley |
| HICKMAN COUNTY, TENNESSEE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

### I.  Introduction and Background

This matter is before the Court upon Defendants' Motion for Summary Judgment.  Docket No. 25.  Along with that Motion, Defendants have contemporaneously filed a supporting Memorandum of Law (Docket No. 26), a "Statement of Material and Undisputed Facts" (Docket No. 27), and the Affidavits with exhibits of Randal Ward (Docket Nos. 28, 28-1 - 28-7) and Donnise Smith (Docket Nos. 29, 29-1 - 29-2).

Plaintiff has filed a document with attached exhibits entitled "Plaintiffs [*sic*] Responses to Motion for Summary Judgment By Defendants And Plaintiffs [*sic*] Audio Recordings of Witnesses That Were Conducted By KGI Investigations Which Will Support Plaintiffs [*sic*] Complaint." Docket No. 31.  Plaintiff has not, however, responded to Defendants' "Statement of Material and Undisputed Facts" nor has he filed his own Statement of Undisputed Material Facts.

Plaintiff, who at one time was represented by counsel but who is now proceeding pro se, filed this action alleging that Defendants violated his First and Eighth Amendment rights pursuant to 42 U.S.C. § 1983.  Docket No. 1.  Specifically, Plaintiff avers that Defendants entered his cell to break up a fight between himself and another inmate, handcuffed him, removed him from the cell,

and, while walking in the hallway, "Defendant Smith held Plaintiff's shoulder while Defendant Harness grabbed the back of Plaintiff's head and slammed it forward into the wall multiple times." *Id.* at p. 3. Plaintiff avers that he was placed in an isolation cell, verbally antagonized, and told that "he was going to 'pay for this.'" *Id.*

Plaintiff further avers that Defendant Harness then ordered Defendant Smith to take all of Plaintiff's property, including his Bible, envelopes, and mail; that no disciplinary report was completed on the incident; that no disciplinary hearing was held prior to removing Plaintiff's property and placing him in segregation; that he was denied access to his Bible while in segregation for a week; and that he was forbidden to send or receive mail while in segregation for a week. *Id.* at p. 4. Plaintiff additionally avers that Hickman County failed to properly train and/or supervise its officers, and either directed its subordinates to act unlawfully or knew that subordinates were acting unlawfully and failed to stop them from doing so. *Id.* at p. 6-7.

Plaintiff sues Defendants in their official and individual capacities, and seeks declaratory and injunctive relief, compensatory and punitive damages, attorneys fees, costs, and all further relief to which he may be entitled. *Id.* at p. 8.

As grounds for their Motion, Defendants argue that Plaintiff's allegations of being denied access to his Bible for one week "are both unsupported by the record and fail to establish a violation of clearly established First Amendment law," such that Plaintiff cannot sustain his First Amendment claim. Docket No. 25. Regarding Plaintiff's Eighth Amendment claim, Defendants argue that they are entitled to qualified immunity and that their actions in restraining Plaintiff, "who was combative, cussing and throwing his head back toward Defendant Smith," did not violate clearly established law under the Eighth Amendment. *Id.* Finally, with regard to Plaintiff's claims against Hickman

County, Defendants argue that Hickman County cannot be liable under § 1983 for the alleged deprivations of Plaintiff's First and Eighth Amendment rights because those alleged violations were not the product of an official Hickman County policy, practice, or custom. *Id*.

Plaintiff, in his Response, reiterates the allegations of his Complaint. Docket No. 31. Plaintiff additionally argues that Defendants failed to follow the Jail's rules and policies when they put Plaintiff in isolation for defending himself against another inmate's attack in which "he broke no rules to begin with," and further "failed to follow the rules and or policies of writing a disciplinary report on [the other inmate] for being out of bounds," such Defendants violated his constitutional rights. *Id*. Plaintiff maintains that the fact that "no disciplinary report was written shows deliberate indifference tword [*sic*]" him. *Id*. Plaintiff reports that he has witnesses who will state that Defendants' reports are false and he includes an "amended statement of facts" that allege discriminatory treatment against him. *Id*.

For the reasons set forth below, the undersigned finds that no genuine issues of material fact exist and that Defendants are entitled to a judgment as a matter of law. Accordingly, the undersigned recommends that Defendants' Motion for Summary Judgment (Docket No. 25) be GRANTED, and that this action be DISMISSED WITH PREJUDICE.

### II. Undisputed Facts[1]

#### A. Affidavit of Sheriff Randal Ward

At all times relevant to the instant action, Sheriff Ward was the Sheriff of Hickman County, Tennessee and has personal knowledge of the matters upon which he testifies. Docket No. 28,

---

[1] Unless otherwise noted, the following facts are in a form required by Fed. R. Civ. P. 56, and are undisputed.

Affidavit of Sheriff Randal Ward ("Ward Aff."), ¶¶ 1, 3.  As Sheriff, Sheriff Ward has access to

inmate records and jail records, including grievances, requests, medical notes, and medical records,

which are kept in the regular course and scope of operating the Hickman County Jail.  *Id.*, ¶ 3.

Also as Sheriff, Sheriff Ward has knowledge of the policies and procedures applicable to the

Hickman County Jail, its correctional officers, and its inmates.  *Id.*

All correctional officers and Jail staff are trained on the Jail policies and procedures.  *Id.*, ¶

4.  Consistent with Staff Training Policy No. A-400, each new employee undergoes training in his or

her first week of employment.  *Id.*  This training includes training on the applicable policies and

procedures.  *Id.*  Each new correctional officer undergoes at least forty (40) hours of training each

year.  *Id.*

Hickman County's Use of Force Policy No. C-170 allows the use of physical force when

verbal commands are not successful.  *Id.*, ¶ 5.  Physical force may be used in self-defense, defense

of others, and to control destructive, resistive, or suicidal behavior.  *Id.*

Incident Reports were created as a result of the fight Plaintiff had with another inmate that

serves at the center of the dispute in the case at bar.  *Id.*, ¶ 7.  Plaintiff never requested any

medical treatment and never complained of any injury or pain after he was detained by Donnise

Smith and Lorye Harness Green.  *Id.*, ¶ 12.

Hickman County has an Inmate Grievance Policy (E-130), a Religious Services Policy (E-

230), a Library Services Policy (E-210), and an Inmate Rights Policy (E-100).  *Id.*, ¶¶ 6, 8, 9, 10.

According to Jail records, at no time did Plaintiff submit a grievance complaining about being

allegedly assaulted by Donnise Smith or Lorye Harness Green.  *Id.*, ¶ 11.  Similarly, Jail records

reflect that Plaintiff never submitted a grievance concerning the alleged denial of his Bible.  *Id.*

4

Plaintiff did not exhaust the available grievance procedures relevant to these claims. *Id.*

## B.  Affidavit of Donnise Smith

At all times relevant to the instant action, Donnise Smith was employed as a Sergeant at the Hickman County Jail; she is familiar with Plaintiff's lawsuits.   Docket No. 29, Affidavit of Donnise Smith ("Smith Aff."), ¶¶ 2, 3.

Sgt. Smith created two Incident Reports related to the fight at issue between Plaintiff and another inmate, which are both true and accurate. *Id.*, ¶¶ 4, 5.  On April 15, 2014, Sgt. Smith was notified of a fight in cell block A. *Id.*, ¶ 5.  When Sgt. Smith arrived in cell block A, she saw Plaintiff and inmate Aaron Howes fighting. *Id.*  Officer Bradley and Sgt. Smith separated the two inmates and Sgt. Smith handcuffed Plaintiff. *Id.*  As Sgt. Smith was taking Plaintiff out of the cell and to the booking area, Captain Lorye Harness (now Green) appeared near the cell. *Id.*  Upon seeing Cpt. Green, Plaintiff starting cussing at her and pulling away from Sgt. Smith. *Id.*  Sgt. Smith instructed Plaintiff to calm down, but Plaintiff continued to be combative and attempt to pull away. *Id.*  Plaintiff started to buck his head backward, which appeared to Sgt. Smith to be as if Plaintiff was attempting to strike her with his head. *Id.*  Sgt. Smith placed her right hand on the back of Plaintiff's neck to prevent this. *Id.*  Sgt. Smith pushed Plaintiff up against the wall in order to gain control. *Id.*  Cpt. Green came over and placed her weight against Plaintiff's body in order to assist getting Plaintiff under control. *Id.*  Ultimately, Plaintiff calmed down enough where Sgt. Smith could escort him to booking. *Id.*

At no time did Sgt. Smith or Cpt. Green slam Plaintiff's head against the wall. *Id.*, ¶ 6.

Plaintiff never complained of any injury or pain and Sgt. Smith did not observe any marks, cuts, or bruises on Plaintiff's body. *Id.*, ¶ 7.  Out of an abundance of caution, Sgt. Smith had the

Jail nurse check Plaintiff for any possible injuries. *Id.*, ¶ 8.

Because Sgt. Smith had to put her hands on Plaintiff and press him against the wall to gain control of him, Sgt. Smith completed a Use of Force Report. *Id.*, ¶ 9.

At no time did Sgt. Smith ever have a conversation with Plaintiff or anyone else regarding Plaintiff requesting or being denied a Bible while he was in segregation following his fight. *Id.*, ¶ 10.

### III. Law and Analysis

### A. Local Rules 7.01(b) and 56.01(c) and (g)

Local Rule 7.01(b) states, in pertinent part:

> **b. Response.** Each party opposing a motion shall serve and file a response, memorandum, affidavits and other responsive material not later than fourteen (14) days after service of the motion, except, that in cases of a motion for summary judgment, that time shall be twenty-one (21) days after the service of the motion, unless otherwise ordered by the Court. Failure to file a timely response shall indicate that there is no opposition to the motion.

Defendants filed the instant Motion on June 15, 2018. Docket No. 25. Plaintiff has failed to respond to Defendants' Motion.

Additionally, with respect to Motions for Summary Judgment specifically, Local Rules 56.01(c) and (g) state, in pertinent part:

> **c. Response to Statement of Facts.** Any party opposing the motion for summary judgment must respond to each fact set forth by the movant by either (i) agreeing that the fact is undisputed; (ii) agreeing that the fact is undisputed for the purpose of ruling on the motion for summary judgment only; or (iii) demonstrating that the fact is disputed. Each disputed fact must be supported by a citation to the record. ...
>
> . . .
>
> **g. Failure to Respond.** Failure to respond to a moving party's statement of material facts, or a non-moving party's statement of

6

additional facts, within the time periods provided by these Rules shall indicate that the asserted facts are not disputed for the purposes of summary judgment.

Plaintiff has failed to respond to Defendants' Statement of Undisputed Material Facts or file his own Statement of Undisputed Material Facts. Pursuant to Local Rule 56.01(g), Plaintiff's failure to respond indicates "that the asserted facts are not disputed for the purposes of summary judgment." Accordingly, there are no genuine issues as to any material fact and all that remains to be determined is whether Defendants are entitled to a judgment as a matter of law.

## B. Motion for Summary Judgment

It would be inappropriate to grant Defendants' Motion solely on the ground that Plaintiff has failed to respond. *See Stough v. Mayville Community Schools*, 138 F.3d 612, 614 (6th Cir. 1998). As the Sixth Circuit has stated:

> [A] district court cannot grant summary judgment in favor of the movant simply because the adverse party has not responded. The Court is required, at a minimum, to examine the movant's Motion for Summary Judgment to ensure that he has discharged [his initial] burden ... The federal rules require that the party filing a Motion for Summary Judgment "always bears the burden of demonstrating the absence of a genuine issue as to a material fact."

*Id.* (citations omitted). The Court will, therefore, consider whether Defendants have met their burden under the appropriate summary judgment standards discussed below.

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A dispute is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

In order to prevail on a Motion for summary judgment, the moving party must meet the burden of proving the absence of a genuine issue as to material fact concerning an essential element of the opposing party's claim. *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). In determining whether the moving party has met its burden, the Court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).

Fed. R. Civ. P. 56 provides that the nonmoving party may not rest upon the mere allegations or denials of his or her pleading, but his or her response, by affidavits or otherwise, must set forth specific facts showing that there is a genuine issue for trial. If a nonmoving party, however, fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, there is no genuine issue as to any material fact because a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 322-23, 106 S. Ct. at 2552, 91 L. Ed. 2d at 273. When this occurs, the moving party is entitled to summary judgment as a matter of law. *Id.* at 322-23, 106 S. Ct. at 2552; *Williams v. Ford Motor Co.,* 187 F.3d 533, 537-38 (6th Cir. 1999).

**C.  42 U.S.C. § 1983**

Plaintiff alleges that Defendants violated his constitutional rights pursuant to 42 U.S.C. § 1983. *See* Docket No. 1. Section 1983 provides, in part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...

Thus, in order to state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 2254-55 (1988)*, citing Parratt v. Taylor,* 451 U.S. 527, 535, 101 S. Ct. 1908, 1913, 68 L. Ed. 2d 420 (1981) (overruled in part on other grounds, *Daniels v. Williams,* 474 U.S. 327, 330-331, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986)); *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 155, 98 S. Ct. 1729, 1733, 56 L. Ed. 2d 185 (1978). The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Id.* at 49, 108 S. Ct. 2255*, quoting United States v. Classic,* 313 U.S. 299, 326, 61 S. Ct. 1031, 1043, 85 L. Ed. 1368 (1941).

**D. Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e**

A prisoner must exhaust all available administrative remedies before filing a claim under §1983 or any other federal law. 42 U.S.C. §1997e(a). *See also, e.g., White v. McGinnis*, 131 F.3d 593, 595 (6th Cir. 1997); *Brown v. Toombs*, 139 F.3d 1102, 1104 (6th Cir. 1998); *Wyatt v. Leonard*, 193 F.3d 876, 878 (6th Cir. 1999). The Prison Litigation Reform Act of 1995 provides in pertinent part as follows:

(a) **Applicability of Administrative Remedies**. No action shall

be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a) (emphasis original).

Additionally, the filing of an initial grievance is not sufficient to satisfy the requirements of § 1997e(a). Rather, the PLRA exhaustion of prison administrative remedies requires a prisoner to pursue his prison grievance through the final level of administrative appeal. *Hartsfield v. Vidor*, 199 F.3d 305, 306 (6th Cir. 1999). In *Hartsfield*, the Sixth Circuit explicitly stated:

Even if Plaintiff did file an initial grievance against [defendants], he was required to continue to the next step in the grievance process . . . . We have previously held that an inmate cannot simply . . . abandon the process before the completion and claim that he has exhausted his remedies. . .

When a defendant shows that a plaintiff has not "exhausted all available state administrative remedies," the only remaining question is whether Plaintiff's claims have been brought with respect to "prison conditions" as that term is used in 42 U.S.C. § 1997e(a).

The Sixth Circuit discussed the meaning of the term "prison conditions" as used in 42 U.S.C. § 1997e(a) in *Freeman v. Francis*, 196 F.3d 641 (6th Cir. 1999). In *Freeman*, Plaintiff inmate brought a lawsuit against prison officials claiming that they had used excessive force against him. The lower court had dismissed his complaint for failure to exhaust administrative remedies. On appeal, Plaintiff argued in part that he was not required to exhaust his administrative remedies because his excessive force claim did not involve a "prison condition" within the meaning of § 1997e(a). The *Freeman* Court stated in part as follows:

The phrase "action . . . with respect to prison conditions" is not defined in § 1997e. Because the question is one of statutory

construction, we must first look to the plain language of the statute. Defendants argue that the term "prison conditions" as used in 18 U.S.C. § 3626(g)(2), which was amended as part of the same legislation as § 1997e, does include claims such as excessive force because it expressly includes "effects of actions of government officials on the lives of confined persons" as well as "conditions of confinement" in defining "prison conditions." . . . It is generally recognized that when Congress uses the same language in two different places in the same statute, the words are usually read to mean the same thing in both places. . . .

Moreover, reading the term "prison conditions" to include claims of excessive force finds support in the purpose and legislative history of the Act. The Act was passed to reduce frivolous prisoner lawsuits and to reduce the intervention of federal courts into the management of the nation's prison systems. A broad exhaustion requirement that includes excessive force claims effectuates this purpose and maximizes the benefits of requiring prisoners to use prison grievance procedures before coming to federal court. Prisons need to know about and address claims of excessive force as they would any other claim concerning prison life so that steps may be taken to stop problems immediately if they exist.

196 F.3d at 643-644 (footnote omitted).

The U. S. Supreme Court has also held that "§ 1997e(a)'s exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences." *See Porter v. Nussle*, 534 U.S. 516, 520, 122 S.Ct. 983, 986 (2002). As the *Porter* Court stated:

Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. . . . In other instances, the internal review might "filter out some frivolous claims." . . . And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.

11

. . .

> For the reasons stated, we hold that the PLRAs exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.

122 S.Ct. at 988, 992 (citations omitted, emphasis added).

## E. The Case at Bar

As an initial matter, under the reasoning of *Porter* and *Freeman*, Plaintiff's claims in the case at bar fall within the meaning of the term "prison conditions" as used in § 1997e(a). He is, therefore, required to exhaust his administrative remedies as set forth in the PLRA.

The undisputed facts establish, *inter alia*, that Hickman County has an inmate grievance policy, and that Plaintiff did not submit a grievance complaining about being allegedly assaulted by Defendants Smith or Green, nor did Plaintiff submit a grievance concerning the alleged denial of his Bible. Ward Aff., ¶¶ 6, 11. Thus, the undisputed facts demonstrate that Plaintiff did not exhaust the available grievance procedures relevant to his claims. Ward Aff., ¶ 11. For this reason alone, Plaintiff's claims should be dismissed for failure to comply with the exhaustion requirements of the PLRA.

Even if Plaintiff had properly exhausted his administrative remedies, however, as will be demonstrated below, the undisputed facts establish that Defendants did not violate his constitutional rights and that Defendants are entitled to qualified immunity. Qualified immunity is "an *immunity from suit* rather than a mere defense to liability." *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156, 150 L. Ed. 2d 272 (2001). Qualified immunity generally shields government officials performing discretionary functions from liability for civil damages "insofar as their conduct does not

violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1983). The right at issue "must have been articulated with a significant degree of particularity," (*Eugene D. v. Karman*, 889 F.2d 701, 706 (6th Cir. 1989), so that it is sufficiently clear to a reasonable official that his or her conduct would violate the right at issue. Qualified immunity is available as long as the official's actions "could reasonably have been thought consistent with the rights [he or she is] alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638, 107 S. Ct. 3034, 3038, 97 L. Ed. 2d 523 (1987).

The initial inquiry and threshold question, according to the Supreme Court, is: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Id.*, *citing Siegert v. Gilley,* 500 U.S. 226, 232, 111 S. Ct. 1789, 1973, 114 L. Ed. 2d 277 (1991). If no constitutional right was violated, there is no necessity for further inquiry. *Id.*

It is undisputed that Hickman County's Use of Force Policy No. C-170 allows the use of physical force upon an inmate when verbal commands are not successful and may be used in self-defense, defense of others, and to control destructive, resistive, or suicidal behavior. Ward Aff., ¶ 5. It is further undisputed that, on April 15, 2014, Defendant Smith was notified of a fight in cell block A, and that when Defendant Smith arrived in cell block A, she saw Plaintiff and inmate Aaron Howes fighting. Smith Aff., ¶ 5. Officer Bradley and Defendant Smith separated the two inmates and Defendant Smith handcuffed Plaintiff. *Id.* As Defendant Smith was taking Plaintiff out of the cell and to the booking area, Defendant Green appeared near the cell. *Id.* Upon seeing Defendant Green, Plaintiff starting cussing at her and pulling away from Defendant Smith. *Id.* Defendant

13

Smith instructed Plaintiff to calm down, but Plaintiff continued to be combative and attempt to pull away. *Id*. Plaintiff started to buck his head backward, which appeared to Defendant Smith to be as if Plaintiff was attempting to strike her with his head. *Id*. Defendant Smith placed her right hand on the back of Plaintiff's neck to prevent this and pushed Plaintiff up against the wall in order to gain control. *Id*. Defendant Green came over and placed her weight against Plaintiff's body in order to assist getting Plaintiff under control. *Id*. Ultimately, Plaintiff calmed down enough where Defendant Smith could escort him to booking. *Id*.

It is undisputed that, at no time did either Defendant Smith or Defendant Green slam Plaintiff's head against the wall, that Plaintiff never complained of any injury or pain, and that Defendant Smith did not observe any marks, cuts, or bruises on Plaintiff's body. *Id*., ¶¶ 6, 7. It is also undisputed that Plaintiff never requested any medical treatment and never complained of any injury or pain after he was detained by Defendants Smith and Green, but that, out of an abundance of caution, Defendant Smith had the Jail nurse check Plaintiff for any possible injuries. Ward Aff., ¶ 12; Smith Aff., ¶ 8.

As to Plaintiff's First Amendment claims, as has been discussed, it is undisputed that Plaintiff did not submit a grievance concerning the alleged denial of his Bible (Ward Aff., ¶ 11), and it is further undisputed that Defendant Smith did not have a conversation with Plaintiff or anyone else regarding Plaintiff requesting or being denied a Bible while he was in segregation following his fight (Smith Aff., ¶ 10).

## IV. Conclusion

For the reasons set forth above, the undersigned finds that Plaintiff has failed to exhaust his administrative remedies as required under the PLRA. The undersigned further finds that the

undisputed facts demonstrate that Defendants did not violate Plaintiff's constitutional rights, such

that Defendants are entitled to a judgment as a matter of law. The undersigned therefore

recommends that Defendants' Motion for Summary Judgment (Docket No. 25) be GRANTED, and

that this action be DISMISSED WITH PREJUDICE.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days

after service of this Report and Recommendation in which to file any written objections to this

Recommendation with the District Court. Any party opposing said objections shall have fourteen

(14) days after service of any objections filed to this Report in which to file any response to said

objections. Failure to file specific objections within fourteen (14) days of service of this Report and

Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas*

*v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986);

28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

_____
JEFFERY S. FRENSLEY
United States Magistrate Judge